No. 24-30252

In the
**United States Court of Appeals for the Fifth Circuit**

STATE OF MISSOURI,

*Plaintiff*,

v.

JOSEPH R. BIDEN, JR.,

*Defendant*.

ROBERT F. KENNEDY, JR.; CHILDREN'S HEALTH DEFENSE;
CONNIE SAMPOGNARO,

*Plaintiffs-Appellees*,

v.

JOSEPH R. BIDEN, JR.; KARINE JEAN-PIERRE; VIVEK H. MURTHY; XAVIER
BECERRA; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET
AL.,

*Defendants-Appellants*.

**On Appeal from the United States District Court
for the Western District of Louisiana**

**Brief of *Amici Curiae* Lt. General Michael Flynn (USA-ret.),
America's Future, Free Speech Coalition, Free Speech Def. and Ed. Fund,
Gun Owners of America, Gun Owners Fdn., Gun Owners of California,
U.S. Constitutional Rights Legal Def. Fund, and
Conservative Legal Def. and Ed. Fund
in Support of Plaintiffs-Appellees and Affirmance**

J. MARK BREWER
  Johnson City, TX
JAMES N. CLYMER
  Lancaster, PA
PATRICK M. MCSWEENEY
  Powhatan, VA
RICK BOYER
  Lynchburg, VA

September 25, 2024

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Ave. W., Ste. 4
  Vienna, VA  22180
  (703) 356-5070
  wjo@mindspring.com
  Attorneys for *Amici Curiae*

*Counsel of Record

Case No. 24-30252

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

ROBERT F. KENNEDY, JR., *et al.*,

Plaintiffs-Appellees,

v.

JOSEPH R. BIDEN, JR., *et al.*,

Defendants-Appellants,

---

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Robert F. Kennedy, Jr., Children's Health Defense, and Connie Sampognaro, Plaintiffs-Appellees

i

Joseph R. Biden, Jr., *et al.*, Defendants-Appellants

Lt. General Michael Flynn (USA-ret.), America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund, *Amici Curiae*.

William J. Olson, Jeremiah L. Morgan, J. Mark Brewer, James N. Clymer, Patrick M. McSweeney, and Rick Boyer are counsel for *Amici Curiae*.

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(c), and 5th Circuit Rule 28.2.1, it is hereby certified that *Amici Curiae* America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund are non-stock, nonprofit corporations, have no parent companies, and no person or entity owns them or any part of them.

       */s/ William J. Olson*
William J. Olson
Attorney of Record for *Amici Curiae*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

ARGUMENT

I.    THE GOVERNMENT RELIES ALMOST ENTIRELY ON THE SUPREME
      COURT'S DECISION IN *MURTHY V. MISSOURI*. . . . . . . . . . . . . . . . . .  4

II.   PLAINTIFFS HAVE DEMONSTRATED STANDING BASED ON ONGOING
      AND CONTINUING HARM AS WELL AS A SIGNIFICANT RISK OF
      FUTURE HARM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

      A.    The Kennedy Plaintiffs Have Standing Based on Government
            Censorship of Their Public Health Activities . . . . . . . . . . . . .  7

      B.    The Kennedy Plaintiffs Have Standing Based on Censorship of
            a Presidential Campaign. . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  SUBSEQUENT DEVELOPMENTS UNDERMINE THE GOVERNMENT'S
      EFFORT TO USE *MISSOURI* AGAINST THE KENNEDY PLAINTIFFS . . . . . . 14

      A.    Unlike the *Missouri* Plaintiffs, the *Kennedy* Plaintiffs Have
            Claimed and Proven Present Injury. . . . . . . . . . . . . . . . . . . 15

      B.    Events Since Oral Argument in *Missouri* Demonstrate the
            High Likelihood that Plaintiffs Will Suffer Future Censorship
            Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.    The Administration Has Reopened Its Pressure
Communications to the Social Media Platforms Leading Up to
the 2024 Election . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    *NRA v. Vullo* Supports Standing . . . . . . . . . . . . . . . . . . . . . . 24

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

Page

**U.S. CONSTITUTION**

Amendment I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

**CASES**

*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) . . . . . . . . . . . . . . . . 2, *passim*

*NRA of America. v. Vullo*, 602 U.S. 175 (2024) . . . . . . . . . . . . . . . . . 24

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1988) . . . . . . . . . . . 16

**MISCELLANEOUS**

D. Abril, "Eliminating social media's legal protection would end Facebook and Twitter 'as we know it,' legal experts say," *Fortune* (June 12, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

S. Adams, "If Congress Repeals Section 230, What Will that Mean for Wikipedia? Here's an (Incomplete) List of Things that Will Break," *Wikimedia Foundation* (Nov. 1, 2023) . . . . . . . . . . . . . . . 19

B. Allyn, "As Trump Targets Twitter's Legal Shield, Experts Have A Warning," *NPR* (May 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . 26

S. Brokaw, "White House says social sites should be liable for COVID-19 misinformation," *UPI* (July 20, 2021) . . . . . . . . . . . . . 26

K. Canales, "Mark Zuckerberg and Jack Dorsey warn that stripping tech firms of Section 230 protections would harm free expression on the internet," *Business Insider* (Oct. 27, 2020) . . . . . . . . . . . . 19, 26

D. DiMolfetta, "CISA, FBI resuming talks with social media firms over disinformation removal, Senate Intel chair says," *Nextgov.com* (May 7, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

L. Feiner, "Biden wants to get rid of law that shields companies like Facebook from liability for what their users post," *CNBC* (Jan. 17, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A. Kenney, "RFK dropped out of the election, but he's still running in Colorado," *Colorado Public Radio* (Aug. 27, 2024) . . . . . . . . . . . . 13

Letter from Mark Zuckerberg to Rep. Jim Jordan (Aug. 26, 2024) . . . . . 17, 18

F. Lucas, "Hunter Laptop Vindicated After Media Deniers May Have Tilted Election," *Daily Signal* (June 11, 2024) . . . . . . . . . . . . . . 18

A. Mak, "How Facebook Tried to Make Itself Antitrust-Proof," *Slate* (Dec. 9, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Z. Miller, "WATCH: Biden says virus disinformation is 'killing people,'" *PBS* (July 16, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

S. Nelson, "FBI 'verified' authenticity of Hunter Biden's abandoned laptop in November 2019: IRS whistleblower," *New York Post* (June 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Office of the Surgeon General, "Health Misinformation" . . . . . . . . . . . 9, 10

B. Ortutay, "All about Section 230, a rule that made the modern internet," *Associated Press* (May 28, 2020) . . . . . . . . . . . . . . . . . . . . 26

"Strengthen Vaccination Communications," *CDC*, June 18, 2024 . . . . . . . . 9

M. Tirrell, "Health misinformation is lowering U.S. life expectancy, FDA Commissioner Robert Califf says," *CNBC* (Apr. 11, 2023). . 23, 24

D. VanderHart, "RFK Jr. is likely to appear on Oregon ballots this fall," *OPB.org* (Aug. 12, 2024) . . . . . . . . . . . . . . . . . . . . . . . . 13

D. VanderHart, "RFK Jr. supporters put him on Oregon ballot, despite suspended campaign," *OPB.org* (Aug. 27, 2024) . . . . . . . . . . . . . . 13

## INTEREST OF *AMICI CURIAE*[1]

Lt. Gen. Michael Flynn (USA-ret.) served in the Army for 33 years, ending his military career as Director of the Defense Intelligence Agency, and his government career as National Security Advisor to President Donald Trump. General Flynn was deplatformed by Twitter on January 8, 2021, the same day President Trump was deplatformed, and not permitted back on the platform until after it was purchased by Elon Musk.  When deplatformed, he had about three-quarters of a million followers, and now has over 1.7 million followers.  He has also been deplatformed on other social media sites, and video podcasts in which he is interviewed continue to be censored.

America's Future, Free Speech Coalition, Free Speech Defense and Education Fund, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund ("CLDEF") are nonprofit organizations which work to defend constitutional rights and protect liberties.

---

[1]  All parties have consented to the filing of this *amici curiae* brief.  No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money intended to fund preparing or submitting the brief. No person other than *amici*, their members, or their counsel contributed money intended to fund preparing or submitting this brief.

Shortly after the November 2020 general election, CLDEF created a Twitter account called "@exposethesteal," which was deplatformed before it ever posted even one tweet. All *amici* have a deep interest in the preservation of the First Amendment rights of all Americans — including the Kennedy Plaintiffs — to share their views with others on social media sites, uncensored by government incentives, threats, or coercion.

## STATEMENT

The Government's brief reads *Murthy v. Missouri*, 144 S. Ct. 1972 (2024) to establish a rule of standing that would make it nearly impossible for Americans whose voices have been secretly throttled or even extinguished by the Government to obtain injunctive relief. The Supreme Court should not be assumed to have shut the courthouse door to persons who, at the demand of the federal government, **have been** censored by components of the Executive Branch, **are being** censored, and are **likely to be** censored in the future. As would be expected, throughout this litigation, the Government has resisted any accountability for its First Amendment violations. Its theory of standing demonstrates a shocking tone deafness to the text, context, purpose, and essential

importance of the First Amendment's protection of not only speech and press, but also assembling with others across the internet to petition government.

The Government attempts to cloak its anti-American Censorship Enterprise in warm and fuzzy images, painting the Government as defending Americans against "the use of platforms to recruit terrorists or harm children." Gov't Br. at 4. In a rich irony, the Government even pulls out its "trump card" of "Russian disinformation" — as if Defendant FBI's censorship of stories about the Hunter Biden laptop was protecting against, rather than orchestrating, election interference. *Id.* at 4-5. The First Amendment was not written to protect Americans against the Russian government, but against their own government.

The First Amendment was built upon the hard-earned rights of Englishmen, yet developed on a foundation quite different from the English system where sovereignty was vested first in a monarch and then in Parliament. Such a government can be expected to treat its citizens as subjects to be surveilled and controlled. Our system is entirely different. Sovereignty in the United States always has been vested in the People, recognizing that "Governments are instituted among Men, deriving their just Powers from the Consent of the Governed." Here, the Government flips that principle on its

head, demanding the right to issue censorship orders, backed by threats, to social media platforms. This, the Government euphemistically defends as "content moderation," eschewing the legally accurate term — censorship. *See, e.g.*, Gov't Br. at 20, 49. Its behavior and its deceptive justifications should not be tolerated by any court.

## ARGUMENT

## I.   THE GOVERNMENT RELIES ALMOST ENTIRELY ON THE SUPREME COURT'S DECISION IN *MURTHY V. MISSOURI.*

The Government seeks to avoid the principal standing issue of the censorship of the Kennedy Plaintiffs, by asserting that Plaintiffs have waived all standing arguments except for "listener standing." However, as the district court noted, Plaintiffs have repeatedly and strenuously argued speaker-based standing, beginning with their complaint. "Because the Kennedy Plaintiffs alleged direct censorship, there is no waiver." *Kennedy v. Biden,* 2024 U.S. Dist. LEXIS 149217 at *9 (W.D. La. 2024).

Then, the Government contends that the standing of the Kennedy Plaintiffs is "foreclosed by *Missouri*." Gov't Br. at 17. The Government does not acknowledge that the allegations by the Kennedy Plaintiffs are substantially more robust than those ruled insufficient in *Missouri*. The Government even argues

4

that it would not be sufficient to establish standing even if the Kennedy Plaintiffs were "'**specifically targeted for spreading alleged disinformation** regarding COVID-19.'" *Id*. (emphasis added).

The Government seeks to avoid injunctive relief, not because it was innocent of pressuring social media platforms to target and either suppress or censor the communications of the Kennedy Plaintiffs — but because the *Missouri* case had found no standing as to other plaintiffs where "the **frequent, intense** communications that took place in 2021 had **considerably subsided** by 2022." *Id*. (emphasis added).

Thus, the Government's position here is that since it was able to successfully conceal its "**frequent**" and "**intense**" pressuring of social media while it was being done — and when discovered it was operating at a "**considerably subsided**" level — this Court is powerless to prevent future abuses of Appellees' rights. This is a truly extraordinary reading of *Missouri*'s ruling on standing. Having been caught red-handed with their past censorship of the Kennedy Plaintiffs, the Executive Branch is trusting that the Judicial Branch will assume that it now will be on its best behavior, and not ascribe to it any likelihood of continued unconstitutional censorship. As money damages would

not be recoverable against the Government, and even if it were, money would provide no meaningful remedy, the only meaningful remedy is injunctive. An honest government would join in a consent order with the Kennedy Plaintiffs to ensure that government does not repeat these abuses. But this Government admits nothing, meaning that it has learned nothing, and will continue its abuses in the future.

**The Government's position could be summarized: we did it, we hid it, we got away with it while we were doing it, and now that you found out about it, there is nothing you can do about it. This court should not ratify that cynical legal view of standing.**

However, even if the Government's reading of *Missouri* were correct, it would not block the Kennedy Plaintiffs here. Under *Missouri*, the Court makes clear that "past injuries are relevant … for their predictive value." *Missouri* at 1987. There is every reason to believe the Government's censorship of the Kennedy Plaintiffs will continue based on what the Defendants have done and what they are politically motivated to do.

## II.     PLAINTIFFS HAVE DEMONSTRATED STANDING BASED ON ONGOING AND CONTINUING HARM AS WELL AS A SIGNIFICANT RISK OF FUTURE HARM.

### A.     The Kennedy Plaintiffs Have Standing Based on Government Censorship of Their Public Health Activities.

The district court summarized the Supreme Court's requirements for

standing as follows:

> the plaintiffs must show a substantial risk that in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant. [*Kennedy* at *7.]

The district court explained that the Supreme Court's *Missouri* ruling

"focused on the fact that … there were **no specific causation findings** made by

the lower courts with respect to any direct instance of content moderation." *Id*.

at *8 (emphasis added).   The district court explained that:

> Kennedy, who is currently running as a presidential candidate in the 2024 presidential election on the independent ticket, was identified as a member of the so-called "Disinformation Dozen," which was made up of twelve individuals that the Government specifically targeted for spreading alleged disinformation regarding COVID-19. Kennedy formed CHD, a non-profit group that was also targeted for alleged COVID-19 misinformation relating to COVID-19 vaccines. The "Disinformation Dozen" was initially identified by the non-profit Center for Countering Digital Hate in March 2021.  [*Id*. at *10.]

7

Based on a long series of events detailed by the court, it concluded "[t]here is not much dispute that both Kennedy and CHD were specifically targeted by the White House, the Office of Surgeon General, and CISA, and the content of Kennedy and CHD were suppressed." *Id*. at *16-17.

Then, the Court reviewed the substantial efforts by the Government to stop the spread of "disinformation" by the Kennedy Plaintiffs on specific social media platforms, and found there was "a substantial risk that in the near future, at least one platform will restrict the speech of Kennedy in response to the actions of one Government Defendant." *Id*. at *17.

As demonstrated by the district court, the Biden Administration has had Robert F. Kennedy, Jr. in its cross-hairs for a long while, and the battle continues. The Administration's contempt for the anti-vaccination message of the Kennedy Plaintiffs and the "Disinformation Dozen" continues. For example, the Centers for Disease Control and Prevention ("CDC") and the Office of the Surgeon General continue to express grave concern about anti-vax voices led by the Kennedy Plaintiffs. The CDC has posted to its website that because "[m]yths and misinformation about vaccines put on-time vaccination at risk," the CDC wants all authorities to speak with the same voice — in favor of vaccinations.

8

> **Myths and misinformation** about vaccines put on-time vaccination at risk. Trust in vaccines is not built through a top-down approach, but through conversations between parents, doctors, nurses, pharmacists, and community members. Patients and parents can feel more confident about vaccinating when **everyone** in the practice **shares the same message**. ["Strengthen Vaccination Communications," *CDC*, June 18, 2024 (emphasis added).]

The Surgeon General, Dr. Vivek H. Murthy, advocates limiting what he calls "misinformation" (*i.e.,* primarily disagreeing with government about vaccines). He considers "misinformation" a threat to "public health efforts."

> We can all benefit from taking steps to improve the quality of health information we consume. **Limiting misinformation helps us make more educated decisions** for ourselves, our loved ones, and our communities. "**Health misinformation is a serious threat to public health**. It can cause confusion, sow mistrust, harm people's health, and **undermine public health** efforts." [Office of the Surgeon General, "Health Misinformation" (emphasis added).]

On this website, the Surgeon General provides this guidance for social media:

> What technology platforms can do:
> - Give researchers access to useful data to properly **analyze** the spread and impact of **misinformation**.
> - Strengthen the **monitoring of misinformation**.
> - **Prioritize early detection of misinformation "super-spreaders" and repeat offenders.**
> - **Evaluate the effectiveness** of internal policies **and practices in addressing misinformation** and be transparent with findings.
> - **Proactively address** information deficits.

- **Amplify** communications from **trusted messengers** and subject matter experts.
- Prioritize protecting health professionals and journalists from online harassment. [*Id.* (emphasis added).]

Note particularly the CDC's plan. First: "early detection of misinformation 'super-spreaders' and repeat offenders." No one better meets this description than the Kennedy Plaintiffs, as charter members of the "Disinformation Dozen." Second, develop "practices in addressing misinformation" and, presumably, evaluate the effectiveness of censorship approaches used in the past. Third, "amplifying" the voices of "trusted messengers," no doubt meaning those who can be trusted to be pro-vaccine.

Lastly, the Twitter account of CDC discusses misinformation as a continuing threat to "Public Health," requiring studying "how information spreads" and "how to respond":

> @CDCgov
> **#Misinformation & disinformation** are growing **challenges in #PublicHealth**.
> Understand the science of **how information spreads** & learn **how to respond** with the Infodemiology Training Program from @PublicGoodProj and @deBeaumontFndtn: https://bit.ly/3UgaoVA #CDCLearning
> 12:40 PM · Jun 7, 2024 · 40.2K Views
> [@CDCgov *Twitter/X* (emphasis added).]

No doubt, the U.S. Department of Justice has advised all Government agencies to dial back their threats to censor certain outspoken Americans — especially the Kennedy Plaintiffs while this litigation is pending — but the CDC and the Surgeon General have been unable to contain themselves in their warnings against what they call vaccine misinformation and disinformation.  The Government is readying its strategy to counterattack — improving on what it has done in the past.

### B.     The Kennedy Plaintiffs Have Standing Based on Censorship of a Presidential Campaign.

The district court then focused on the fact that "Kennedy is a 2024 presidential candidate." *Kennedy* at *23.  The Defendant FBI has already demonstrated that it is willing to go to great lengths to intervene in a federal election, given its effort to discredit, suppress, and censor the Hunter Biden laptop story during the November 2020 election, even though it had verified the laptop one year before, in November 2019.[2]  Since the defendant FBI intervened in the November 2020 Presidential election to promote the election of the Biden-Harris ticket, **if not enjoined**, there is every reason to believe that it will

---

[2]  S. Nelson, "FBI 'verified' authenticity of Hunter Biden's abandoned laptop in November 2019: IRS whistleblower," *New York Post* (June 23, 2023).

11

intervene again to protect the Harris-Walz ticket.  To believe anything else would be naivety.

Should the Government contend that Mr. Kennedy has withdrawn from the race entirely and is no longer a candidate for President, we address that matter here.  In fact, Mr. Kennedy is still a candidate for President of the United States. Although he has asked to be taken off the ballot in hotly contested states, he has requested Americans to vote for him in all other states, believing that he still has a chance to become President.  In announcing the "suspension" (not termination) of his campaign, Kennedy stated:

> I want everyone to know that **I am not terminating my campaign**. I am simply suspending it and **not ... ending it.**  My name will remain on the ballot in most states.  If you live in a blue state, you can vote for me without harming or helping President Trump or Vice President Harris.  In red states the same will apply.  **I encourage you to vote for me.**  And if enough of you do vote for me and neither of the major party candidates win 270 votes, which is quite possible ... then **I could conceivably still end up in the White House in a contingent election**.  But **in about ten battleground states where my presence would be a spoiler, I'm going to remove my name**.[3]

Additionally, on September 23, 2024, Kennedy appealed to the U.S. Supreme Court in an effort to have his name restored to the ballot in New York

---

[3]  R. Kennedy speech (Aug. 23, 2024) at 17:13-18:17.

State, which would be a curious expenditure of time and effort for a candidate if he were not seeking voters' support for President.  His campaign in red and blue states continues as illustrated by the fact that four days after suspending his campaign in 10 swing states, Kennedy's campaign emailed supporters in Colorado, asking them to stay the course.  "'We are not withdrawing in Colorado.  Mr. Kennedy has encouraged all of his supporters to vote for him in CO!' the campaign wrote in an email to state officials" on August 27, 2023.[4]  In Oregon, the Kennedy campaign attracted enough signatures to create a new political party, the "We the People" party, on August 12.[5]  Despite Kennedy's suspension in 10 states on August 24, the We the People party formally nominated him three days later, securing his spot on Oregon's 2024 presidential ballot.[6]  Mike Cully, Kennedy's Oregon campaign manager, said that "the ultimate goal is for Kennedy to receive more than 5% of the national popular vote." *Id.*

---

[4]  A. Kenney, "RFK dropped out of the election, but he's still running in Colorado," *Colorado Public Radio* (Aug. 27, 2024).

[5]  D. VanderHart, "RFK Jr. is likely to appear on Oregon ballots this fall," *OPB.org* (Aug. 12, 2024).

[6]  D. VanderHart, "RFK Jr. supporters put him on Oregon ballot, despite suspended campaign," *OPB.org* (Aug. 27, 2024).

For both reasons — the alleged public health "disinformation" threat posed by the Disinformation Dozen and the ongoing Kennedy Presidential Campaign — the district court correctly concluded that Plaintiffs Robert F. Kennedy, Jr. and Childrens Health Defense have Article III standing to bring their suit for injunctive relief against the government. *Kennedy* at *27. The Government contends that *Missouri*, where the Supreme Court determined the plaintiffs do not have standing, controls here. However, Kennedy's claims are significantly stronger than those of the plaintiffs in *Missouri*. Unlike the plaintiffs in *Missouri*, the Kennedy Plaintiffs have alleged and proven not just past injury but also current injury and likelihood of future injury.[7]

## III.   SUBSEQUENT DEVELOPMENTS UNDERMINE THE GOVERNMENT'S EFFORT TO USE *MISSOURI* AGAINST THE KENNEDY PLAINTIFFS.

In *Missouri*, the Supreme Court ruled that the plaintiffs there had failed to show standing, largely on the basis of two factual findings that have since been disproven. The Supreme Court found that the *Missouri* plaintiffs had not proven "each platform acted due to 'government-coerced enforcement' of its policies … rather than in its own judgment as an 'independent acto[r].'" *Missouri* at 1988.

---

[7]  *Kennedy v. Biden*, Case 3:23-cv-00381 (W.D. La.), Dkt. 52 at 13-17 (Aug. 1, 2024) (hereinafter "Kennedy Supp. Br.").

The Court likewise found that the plaintiffs could not show a likelihood of future injury, asserting that the plaintiffs "fail[ed], by and large, to link their past social-media restrictions to the defendants' communications with the platforms. Thus, the events of the past do little to help any of the plaintiffs establish standing to seek an injunction to prevent future harms." *Id.* at 1988-89. The Court ruled that "without proof of an ongoing pressure campaign, it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants." *Id.* at 1993. However, subsequent events have undermined those assumptions — particularly with respect to the Kennedy Plaintiffs.

### A. Unlike the *Missouri* Plaintiffs, the *Kennedy* Plaintiffs Have Claimed and Proven Present Injury.

As the district court noted, "At the preliminary injunction stage, the degree of evidence to show standing is less than at later stages. 'The movant must clearly show only that each element of standing is likely to obtain in the case at hand.'" *Kennedy* at *21-22 (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329-30 (5th Cir. 2020)); *see also Missouri* at 1986. The *Missouri* plaintiffs asserted only past injury and the threat of future injury, not a current, continuing injury, but the Kennedy Plaintiffs' much greater proof of the likelihood of future

injury, because they have alleged and proven an ongoing, continuing injury, is sufficient for standing regardless of any likelihood of future injury.  As Plaintiffs noted in their Supplemental Brief on Standing in the district court, a "present, 'continuing injury' *is* 'sufficient to create standing for injunctive relief.'"[8]  The Supreme Court has likewise been clear that standing must be "based" upon "present or threatened injury."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1988).  Plaintiffs have amply alleged ongoing, continuing injury.  Accordingly, their entitlement to standing is clear.

In contrast to the *Murthy* plaintiffs, Mr. Kennedy and CHD are **still being censored** by major social-media platforms.  Initially deplatformed from Facebook and Instagram in August 2021, CHD remains deplatformed from Facebook and Instagram today.  Holland Dec. ¶¶ 5, 26.  Initially deplatformed from YouTube in September 2021, CHD remains deplatformed from YouTube today.  Holland Dec. ¶ 6.  And while Mr. Kennedy is not deplatformed, the social-media censorship inflicted on him is not only continuing today; it is intensifying.[9]

Indeed:

---

[8]  Kennedy Supp. Br. at 14 (quoting *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 902 (5th Cir. 2023).

[9]  Kennedy Supp. Br. at 15 (citing Declaration of Mary Holland, CEO of Plaintiff Children's Health Defense ("CHD") (hereinafter "Holland Dec.") (emphasis added).

> In late June, Meta blocked Instagram and Facebook users from posting links to an online campaign event called **the "Real Debate,"** in which Mr. Kennedy answered in real time the debate questions posed to candidates Biden and Trump. Rasmussen Dec. ¶¶ 20-22. **Meta** has shut down regional pages of the Kennedy campaign. Rasmussen Dec. ¶ 19.  Meta is currently removing links to news coverage of Kennedy campaign events.  Rasmussen Dec. ¶ 24.[10]

Accordingly, due to the ongoing and continuing injury inflicted by Defendants, Plaintiffs have standing to obtain injunctive relief.

**B.      Events Since Oral Argument in *Missouri* Demonstrate the High Likelihood that Plaintiffs Will Suffer Future Censorship Injury.**

In August 2024, Meta (Facebook) CEO Mark Zuckerberg provided bombshell testimony to the House Judiciary Committee, conceding — and apologizing for — the fact that Facebook had caved to Biden Administration pressure to censor content.  In an August 26, 2024 letter to House Judiciary chairman Jim Jordan (R-OH), Zuckerberg exposed that "senior officials from the Biden administration, including the White House, had repeatedly pressured our team for months to censor certain COVID-19 content…."[11]  Zuckerberg conceded that **"COVID-19-related changes [were] made to our enforcement**

---

[10]  Kennedy Supp. Br. at 15 (quoting declaration of Kennedy campaign manager Brigid Rasmussen) (emphasis added).

[11]  [Letter from Mark Zuckerberg](#) to Rep. Jim Jordan (Aug. 26, 2024).

**in the wake of this pressure**." *Id*. (emphasis added). "I believe the government pressure was wrong, and I regret that we were not more outspoken about it," he admitted. *Id*.

Further, Zuckerberg admitted that Facebook had buried the Hunter Biden laptop story when falsely advised by the FBI that it was a Russian disinformation operation. "It's since been made clear that the story was not Russian disinformation, and in retrospect, we shouldn't have demoted the story," he again admitted. *Id*. In fact, **polling showed it was the FBI's election interference in suppressing social media (including Facebook), not Russia's supposed actions, that likely changed the outcome of the 2020 election**. Over 9 percent of Biden supporters polled stated that they would have changed their vote had they known of the Hunter Biden laptop story.[12]

Zuckerberg represented that "we're ready to push back if something like this happens again." *Id*. But his claims ring hollow, given the widespread reporting of the Hunter Biden laptop in outlets such as the *New York Post*, which had previously put Facebook on notice of the credibility of the story. They also ring hollow given the existential threat to the Big Tech companies by a

---

[12] F. Lucas, "Hunter Laptop Vindicated After Media Deniers May Have Tilted Election," *Daily Signal* (June 11, 2024).

government willing to threaten to repeal the liability protection for Big Tech

platforms enshrined in Section 230 of the Communications Decency Act.

Indeed, Zuckerberg earlier had testified before Congress that "without Section

230, platforms could potentially be held liable for everything people say."  K.

Canales, "Mark Zuckerberg and Jack Dorsey warn that stripping tech firms of

Section 230 protections would harm free expression on the internet," *Business

Insider* (Oct. 27, 2020).  Likewise, then-Twitter CEO Jack Dorsey testified that

repeal would "collapse how we communicate on the Internet."  *Id*.

The Big Tech companies simply cannot afford to resist to the point that

Section 230 is jeopardized.  As the Wikimedia Foundation wrote, in its own self-

interest, a threat of Section 230 repeal is a governmental "act of … extortion,

holding the entire internet hostage until a few companies meet their demands."[13]

As the district court pointed out, the White House explicitly threatened to

revoke Section 230 if the social media platforms refused to do its censorship

bidding:

> On July 20, 2021, at a White House Press Conference, White House
> Communications Director Kate Bedingfield ("Bedingfield") stated

---

[13]  S. Adams, "If Congress Repeals Section 230, What Will that Mean for
Wikipedia? Here's an (Incomplete) List of Things that Will Break," *Wikimedia
Foundation* (Nov. 1, 2023).

the White House would be announcing whether social-media platforms are legally liable for **misinformation** spread on their platforms, and examining how misinformation fits into the liability protection granted by **Section 230** of the Communications Decency Act. Bedingfield further stated the administration was reviewing policies that could include amending the Communications Decency Act. Bedingfield also stated the administration was reviewing policies that could include amending the Communications Decency Act, and that **social-media platforms "should be held accountable**." [*Kennedy* at *14 (emphasis added).]

The Supreme Court may not have believed or understood the severity of the Section 230 threat or the fact that it motivated Facebook to yield — at least before Zuckerberg's testimony. The cause-and-effect connection of these events can no longer be disregarded. Nor should the threats be considered in a vacuum. Indeed, in an interview with the *New York Times* in January 2020, then-candidate Joe Biden openly called for the complete repeal of Section 230. "Section 230 should be revoked, immediately should be revoked, number one. For Zuckerberg and other platforms," Biden threatened them.[14]

Zuckerberg's stunning testimony is still further evidence that Plaintiffs here have met the burden the Supreme Court thought the *Missouri* plaintiffs failed to meet, demonstrating that "the third-party platforms 'will likely react in

---

[14] L. Feiner, "Biden wants to get rid of law that shields companies like Facebook from liability for what their users post," *CNBC* (Jan. 17, 2020).

predictable ways' to the defendants' conduct." *Missouri* at 1986 (quoting *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

Even if Zuckerberg were personally willing to jeopardize his and other companies' financial future resulting from repeal of Section 230, his is only one of many platforms which the government has coerced and continues to coerce, hiding that pressure from the American people as it has done in the past.

### C.    The Administration Has Reopened Its Pressure Communications to the Social Media Platforms Leading Up to the 2024 Election.

Defendants defend on the curious ground that they may not continue to threaten social media platforms because the need no longer exists at the moment. "[T]he Federal Government has wound down its … pandemic response measures … [which] makes it particularly unlikely that an injunction is necessary to protect plaintiffs." Gov't Br. at 47.

Critically, in determining that the *Missouri* plaintiffs could not show future injury, the Supreme Court not only found that the censorship efforts had "slowed" by 2022,[15] but relied heavily on the fact that "**the Government has represented that it will not resume** [social media censorship] operations for the 2024 election." *Missouri* at 1993 (emphasis added).  Should the Biden

---

[15] *Missouri* at 1994.

Administration be counted on to keep such a promise if a story as significant as the son-of-the-President Hunter Biden laptop story surfaced with the possibility of derailing Vice President Harris' presidential campaign?  What would be the consequence post-election for the breach of such a promise?  To the extent that President Biden is now not functioning properly, would those who are running the country behind the scenes not be highly motivated to maintain themselves in power by engineering the election of the Vice President to the Presidency?

Before the *Missouri* decision had even been issued, Defendants' admissions had already undermined the Government's arguments and the Supreme Court's assumptions.  As the district court noted, in May 2024, after oral arguments in *Missouri* and before the decision was even released in June, Senate Intelligence Committee chairman Mark Warner (D-Va.) disclosed that the FBI, the agency behind the disinformation that the Hunter Biden story was Russian interference just before the 2020 election, has again begun its "discussions" with social media platforms for 2024.  It has been reported that Warner disclosed that "[k]ey federal agencies have resumed discussions with social media companies over **removing disinformation on their sites as the November [2024] presidential election nears**, a stark reversal after the Biden administration for months froze

communications with social platforms amid a pending First Amendment case [*Missouri*] in the Supreme Court."[16]  While the coercion efforts may have "slowed" during 2022, they are ramping back up for the 2024 elections — in stark contrast to the Government representations on which the Court relied.

There is no sign that the Biden-Harris Administration has changed its stripes with respect to its obsession on shutting down dissenting "public health" speech.  Administration officials have already begun to demand the authority to regulate the distribution of health information the government characterizes as "misinformation."  Last year, FDA Commissioner Robert Califf joined the chorus, demanding expanded authority to censor "unapproved" information on social media platforms.  "You think about the impact of a single person reaching a billion people on the internet all over the world, we just weren't prepared for that.  We don't have societal rules that are adjudicating it quite right, and I think it's impacting our health in very detrimental ways," Califf told CNBC.[17]  "He said there's a need for better regulation, including 'specific **authorities at FDA**,

---

[16]  D. DiMolfetta, "CISA, FBI resuming talks with social media firms over disinformation removal, Senate Intel chair says," *Nextgov.com* (May 7, 2024) (emphasis added).

[17]  M. Tirrell, "Health misinformation is lowering U.S. life expectancy, FDA Commissioner Robert Califf says," *CNBC* (Apr. 11, 2023).

FTC and other areas' **to root out misinformation**." *Id.* There is no need to speculate.

For these reasons, Plaintiffs have demonstrated a high likelihood of both continuing and future injury, entitling them to injunctive relief.

## IV. *NRA V. VULLO* SUPPORTS STANDING.

The Government asserts that "[t]he Supreme Court emphasized in *Vullo* that government officials are entitled to express their views (even forcefully) in an effort to persuade private actors, so long as they do not make an implicit or explicit threat." Gov't Br. at 13. Here, the district court found that the defendants had in fact made such threats to social media platforms — threats far more punitive than anything reported in *NRA of America. v. Vullo*, 602 U.S. 175 (2024).[18] Actually, in *Vullo*, the Supreme Court reaffirmed the bedrock principle that "[g]overnment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *Vullo* at 180.

In *Vullo*, the National Rifle Association ("NRA") alleged that Maria Vullo, the director of New York's Department of Financial Services, had

---

[18] Some of these *amici* filed an *amicus* brief supporting the NRA in that litigation. *See* Brief of *Amici* Gun Owners of America, *et al.*, *National Rifle Association of America v. Vullo*, Case No. 22-842.

threatened to impose regulatory penalties against insurance companies that did business with the NRA, because Vullo and Governor Andrew Cuomo were hostile to the views of firearms advocacy organizations. By contrast, here "the White House Press Secretary told media that with respect to 'the major platforms,' President Biden favors 'a robust anti-trust program. So his view is that there's more that needs to be done to ensure that this type of misinformation; disinformation; sometimes life-threatening information is not going out to the American public.'"[19]

Mark Zuckerberg has described such an antitrust action as an "existential" threat that "you go to the mat and you fight."[20] Or, as in this case, you comply with whatever demands you must in order to avoid that litigation. Facebook resisted the White House demands to deplatform Plaintiffs for two months, and then President Biden, "asked if he had a message for platforms like Facebook … told reporters, 'They're killing people.'"[21] Then, four days later on July 20, the White House Communications Director tied Biden's "killing people" comments

---

[19] Kennedy Supp. Br. at 8 (citing Holland Dec. at ¶ 14).

[20] A. Mak, "How Facebook Tried to Make Itself Antitrust-Proof," *Slate* (Dec. 9, 2020).

[21] Z. Miller, "WATCH: Biden says virus disinformation is 'killing people,'" *PBS* (July 16, 2021).

directly to a threat to revoke the liability protections of Section 230 of the Communications Decency Act if the platforms refused to comply.[22]

The loss of Section 230 liability constituted a far greater threat than the threats in the *Vullo* case. Zuckerberg testified before Congress in 2020 that "without Section 230, platforms could potentially be held liable for everything people say."[23] Twitter's then-CEO Jack Dorsey testified that repeal would "collapse how we communicate on the Internet." *Id.* UCLA law Professor Eric Goldman has also warned that repealing Section 230 would expose social media companies to defamation liability for trillions of third-party postings, and thus would constitute "an existential threat" to the platforms.[24] If the Supreme Court agreed that NRA had standing to challenge the threats made by Vullo and Cuomo to financial institutions, Plaintiffs here should have standing to challenge the far

---

[22] S. Brokaw, "White House says social sites should be liable for COVID-19 misinformation," *UPI* (July 20, 2021).

[23] K. Canales, "Mark Zuckerberg and Jack Dorsey warn that stripping tech firms of Section 230 protections would harm free expression on the internet," *Business Insider* (Oct. 27, 2020).

[24] B. Ortutay, "All about Section 230, a rule that made the modern internet," *Associated Press* (May 28, 2020). *See also* B. Allyn, "As Trump Targets Twitter's Legal Shield, Experts Have A Warning," *NPR* (May 30, 2020); D. Abril, "Eliminating social media's legal protection would end Facebook and Twitter 'as we know it,' legal experts say," *Fortune* (June 12, 2020).

more direct and far more severe threats made by the White House against the

social media platforms.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be affirmed.

Respectfully submitted,

*/s/ William J. Olson*

_____

J. MARK BREWER
  209 N. Nugent Ave.
  Johnson City, TX 78636

JAMES N. CLYMER
  CLYMER MUSSER & SARNO, P.C.
  408 West Chestnut Street
  Lancaster, PA 17603

PATRICK M. MCSWEENEY
  3358 John Tree Hill Rd.
  Powhatan, VA  23139

RICK BOYER
  INTEGRITY LAW FIRM
  P.O. Box 10953
  Lynchburg, VA  24506

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Ave. W., Ste. 4
  Vienna, VA  22180
  (703) 356-5070
  wjo@mindspring.com

Attorneys for *Amici Curiae*
*Counsel of Record*
September 25, 2024

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Lt. General Michael Flynn (USA-ret.), *et al.* in Support of Plaintiffs-Appellees and Affirmance, was made, this 25th day of September, 2024, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

                                         */s/ William J. Olson*

                                         William J. Olson
                                         Attorney for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1.     That the foregoing Brief *Amicus Curiae* of Lt. General Michael Flynn (USA-ret.), *et al*. in Support of Plaintiffs-Appellees and Affirmance complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 5,526 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as well as Circuit Rule 32.1, because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 21.0.0.194 in 14-point CG Times.

                                        */s/ William J. Olson*
                                        William J. Olson
                                        Attorney for *Amici Curiae*
                                        Dated:  September 25, 2024